UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

GREGORY WILLIAMS, JR.,

               Plaintiff,

                                   Case No. 2:23-cv-232

v.

                                   Honorable Robert J. Jonker

UNKNOWN PERRY et al.,

               Defendants.
_____/

## OPINION DENYING LEAVE
## TO PROCEED *IN FORMA PAUPERIS* - THREE STRIKES

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff

seeks leave to proceed *in forma pauperis*. Because Plaintiff has filed at least three lawsuits that

were dismissed as frivolous, malicious or for failure to state a claim, he is barred from proceeding

*in forma pauperis* under 28 U.S.C. § 1915(g). The Court will order Plaintiff to pay the $402.00

civil action filing fees applicable to those not permitted to proceed *in forma pauperis*.[1] This fee

must be paid within twenty-eight (28) days of this opinion and accompanying order. If Plaintiff

fails to pay the fee, the Court will order that this case be dismissed without prejudice. Even if the

case is dismissed, Plaintiff must pay the $405.00 filing fees in accordance with *In re Alea*, 286

F.3d 378, 380–81 (6th Cir. 2002).

---

[1] The filing fee for a civil action is $350.00. 28 U.S.C. § 1914(a). The Clerk is also directed to collect a miscellaneous administrative fee of $55.00. 28 U.S.C. § 1914(b); https://www.uscourts. gov/services-forms/fees/district-court-miscellaneous-fee-schedule.  The miscellaneous administrative fee, however, "does not apply to applications for a writ of habeas corpus or to persons granted *in forma pauperis* status under 28 U.S.C. § 1915." *See* https://www.uscourts.gov/ services-forms/fees/district-court-miscellaneous-fee-schedule.

## Discussion

The Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which was enacted on April 26, 1996, amended the procedural rules governing a prisoner's request for the privilege of proceeding *in forma pauperis*. As the Sixth Circuit has stated, the PLRA was "aimed at the skyrocketing numbers of claims filed by prisoners–many of which are meritless–and the corresponding burden those filings have placed on the federal courts." *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). For that reason, Congress created economic incentives to prompt a prisoner to "stop and think" before filing a complaint. *Id.* For example, a prisoner is liable for the civil action filing fee, and if the prisoner qualifies to proceed *in forma pauperis*, the prisoner may pay the fee through partial payments as outlined in 28 U.S.C. § 1915(b). The constitutionality of the fee requirements of the PLRA has been upheld by the Sixth Circuit. *Id.* at 1288.

In addition, another provision reinforces the "stop and think" aspect of the PLRA by preventing a prisoner from proceeding *in forma pauperis* when the prisoner repeatedly files meritless lawsuits. Known as the "three-strikes" rule, the provision states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under [the section governing proceedings *in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).  The statutory restriction "[i]n no event," found in § 1915(g), is express and unequivocal. The statute does allow an exception for a prisoner who is "under imminent danger of serious physical injury." The Sixth Circuit has upheld the constitutionality of the three-strikes rule against arguments that it violates equal protection, the right of access to the courts, and due process, and that it constitutes a bill of attainder and is *ex post facto* legislation. *Wilson v. Yaklich*, 148 F.3d 596, 604–06 (6th Cir. 1998).

2

Plaintiff has been an active litigant in this Court. In three of Plaintiff's lawsuits filed since 2021, the Court entered dismissals on the grounds that the cases were frivolous, malicious, and/or failed to state a claim. *See Williams v. Sices*, No. 1:22-cv-171 (W.D. Mich. Aug. 22, 2022); *Williams v. Ionia Corr. Facility*, No. 1:21-cv-1049 (W.D. Mich. Jan. 7, 2022); *Williams v. Ionia Corr. Facility*, No. 1:21-cv-937 (W.D. Mich. Dec. 15, 2021).

Moreover, Plaintiff's allegations do not fall within the "imminent danger" exception to the three-strikes rule. 28 U.S.C. § 1915(g). The Sixth Circuit set forth the following general requirements for a claim of imminent danger:

> In order to allege sufficiently imminent danger, we have held that "the threat or prison condition must be real and proximate and the danger of serious physical injury must exist at the time the complaint is filed." *Rittner v. Kinder*, 290 F. App'x 796, 797 (6th Cir. 2008) (internal quotation marks omitted). "Thus a prisoner's assertion that he or she faced danger in the past is insufficient to invoke the exception." *Id.* at 797–98; *see also* [*Taylor v. First Med. Mgmt.*, 508 F. App'x 488, 492 (6th Cir. 2012)] ("Allegations of past dangers are insufficient to invoke the exception."); *Percival v. Gerth*, 443 F. App'x 944, 946 (6th Cir. 2011) ("Assertions of past danger will not satisfy the 'imminent danger' exception."); *cf.* [*Pointer v. Wilkinson*, 502 F.3d 369, 371 n.1 (6th Cir. 2007)] (implying that past danger is insufficient for the imminent-danger exception).
>
> In addition to a temporal requirement, we have explained that the allegations must be sufficient to allow a court to draw reasonable inferences that the danger exists. To that end, "district courts may deny a prisoner leave to proceed pursuant to § 1915(g) when the prisoner's claims of imminent danger are conclusory or ridiculous, or are clearly baseless (i.e. are fantastic or delusional and rise to the level of irrational or wholly incredible)." *Rittner*, 290 F. App'x at 798 (internal quotation marks and citations omitted); *see also Taylor*, 508 F. App'x at 492 ("Allegations that are conclusory, ridiculous, or clearly baseless are also insufficient for purposes of the imminent-danger exception.").

*Vandiver v. Prison Health Services, Inc.*, 727 F.3d 580, 585 (6th Cir. 2013). A prisoner's claim of imminent danger is subject to the same notice pleading requirement as that which applies to prisoner complaints. *Id.* Consequently, a prisoner must allege facts in the complaint from which

3

the Court could reasonably conclude that the prisoner was under an existing danger at the time he filed his complaint, but the prisoner need not affirmatively prove those allegations. *Id.*

Plaintiff is currently incarcerated at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan, and the events of which he complains occurred there. Plaintiff sues Assistant Deputy Warden Michael James, Prisoner Counselor Amanda B. Wyatt, Sergeant Unknown Perry, Correctional Officers Unknown Johnson and Unknown Voeks, and Registered Nurses Unknown Kelly and Unknown Chad.

Plaintiff alleges that on October 29, 2023, Defendant Perry came to his cell to serve Plaintiff with a "sanction misconduct of sheet restriction." (Compl., ECF No. 1, PageID.8.) Plaintiff alleges that Defendant Perry called him a "low life bitch" and told Plaintiff to mind his own business and stay out of "the bullshit" with another inmate, Tony Hamilton. (*Id.*) Plaintiff responded that he was not trying to "hear [anything] about another inmate." (*Id.*) Defendant Perry became enraged and told Plaintiff that he had "eyes all around here you f***ing idiot." (*Id.*) Plaintiff alleges that Defendant Perry then reached through the cell bars and smacked Plaintiff in the head so hard that Plaintiff's head jerked back and hit the cell wall. (*Id.*) Before walking away, Defendant Perry said, "I would make your life a living hell on this compound[;] I would f*** you up ignorant black bitch." (*Id.*) Plaintiff alleges that he was left "bleeding from the back of [his] head." (*Id.*)

Plaintiff repeatedly asked other officers for medical attention but claims that those officers laughed and told Plaintiff that he should have minded his own business. (*Id.*, PageID.10.) Plaintiff submitted kites to the healthcare department on October 30, October 31, and November 1, 2023. (*Id.*) He alleges that when Defendants Kelly and Chad picked up the kites and Plaintiff showed

them the back of his head, Defendants Kelly and Chad told Plaintiff that they would not be taking his kites to healthcare and that he caused the injury to himself. (*Id.*, PageID.10–11.)

On November 1, 2023, Plaintiff wrote to Defendant James about the situation. (*Id.*, PageID.11.) He gave the kite to Defendant Wyatt, who told Plaintiff, "Don't be surprise[d] if this never get[s] to the hands [you're] sending it to." (*Id.*) When Plaintiff asked what she meant, Defendant Wyatt told Plaintiff to "take it the way you want" and walked away. (*Id.*, PageID.12.)

Plaintiff alleges further that on October 31, November 1, and November 2, 2023, Defendants Johnson and Voeks came to his cell and threatened to break Plaintiff's arms and "f*** [him] up real bad to where nobody would recognize [him] and take [Plaintiff's] life if they got the chance to." (*Id.*, PageID.14.)

A few weeks later, on November 20, 2023, Plaintiff wrote to Defendant James again. (*Id.*, PageID.13.) Plaintiff gave that kite to Defendant Wyatt. (*Id.*) Defendant Wyatt told Plaintiff, "You just don't get it[.] I'm not turning [anything] in for you [because] you [are] claiming this false ass shit that something had happen[ed] to you [on] October 29, 202[3] with you and [Defendant] Perry." (*Id.*) Plaintiff got mad and accused Defendant Wyatt of having sexual relations with Defendant Perry. (*Id.*) Defendant Wyatt responded, "If I am [what's it] to you[;] that's why you [are] in the situation you are now." (*Id.*) Defendant Wyatt then walked away, and Plaintiff heard her say that the kite "would be going in the garbage like the first ones." (*Id.*)

The next day, Plaintiff spoke to Defendant James about the situation while Defendant James was making rounds. (*Id.*, PageID.14.) Plaintiff asked if Defendant James had received his kites. (*Id.*) Defendant James responded, "Dude[,] you have a hell [of an] imagination[;] [nothing] happen[ed] to you like that and me not knowing of it period." (*Id.*, PageID.15.) Plaintiff insisted

that it did, and Defendant James said that he had been warned about Plaintiff's "paranoia" and walked away. (*Id.*)

Plaintiff alleges that he tried to talk to Defendants Kelly and Chad about his head every day from October 30-November 20, 2023. (*Id.*) Plaintiff complained that he was experiencing migraines and cloudy vision. (*Id.*) According to Plaintiff, Defendants Kelly and Chad told him that there was nothing they could do. (*Id.*) Plaintiff alleges further that Defendant Chad told him that they had been "given orders by higher authority not to see [Plaintiff] or process [his] healthcare kites." (*Id.*, PageID.16.)

According to Plaintiff, the lack of healthcare caused his injuries to "heal[] dramatically." (*Id.*, PageID.17.) Plaintiff alleges that his head "still swells and bleeds occasionally" and that he sometimes experiences limited vision. (*Id.*, PageID.20.) Plaintiff states further that he suffers from severe headaches at times. (*Id.*) He further indicates that he still receives threats from other officers, including Defendants Johnson and Voeks, and that in "certain instances [he] fear[s] for [his] safety [and] life." (*Id.*)

The Court certainly does not condone assaults on and threats toward prisoners, as well as the denial of medical care. However, while Plaintiff vaguely alleges that he continues to receive threats from other officers, including Defendants Johnson and Voeks, he does not allege any facts suggesting that he has been subjected to physical harm since the alleged assault by Defendant Perry. Thus, the dearth of factual allegations to support Defendants Johnson and Voeks' alleged threats leads the Court to conclude that such threats are described with insufficient facts and detail to establish that Plaintiff is in danger of imminent physical injury. *Rittner*, 280 F. App'x at 798 (footnote omitted). Based on Plaintiff's allegations, this risk is not sufficiently "'real and proximate.'" *Vandiver*, 727 F.3d at 585 (quoting *Rittner*). That is not to say that it is "ridiculous

. . . baseless . . . fantastic–or delusional . . . irrational or wholly incredible." *Id.* It is simply insufficient.

Plaintiff also references that he continues to experience severe headaches, limited vision, and bleeding and swelling at times. In 2019, the Sixth Circuit provided the following definition of a physical injury: "A physical injury is 'serious' for purposes of § 1915(g) if it has potentially dangerous consequences such as death or serious bodily harm. Minor harms or fleeting discomfort don't count." *Gresham v. Meden*, 938 F.3d 847, 850 (6th Cir. 2019). Although Plaintiff's complaint suggests that he did not receive medical attention after the assault by Defendant Perry, he does not allege any facts from which the Court could infer that the conditions Plaintiff continues to experience have consequences that could lead to death or serious bodily harm. The Court does not discount Plaintiff's allegations, but they are "described with insufficient facts and detail to establish that he is in danger of imminent physical injury." *Rittner*, 290 F. App'x at 798 (footnote omitted).

Moreover, besides Plaintiff's conclusory statements that he is still subject to threats and certain medical issues, which as discussed above are insufficient to show that Plaintiff was in danger of imminent physical injury when he filed his complaint, all of Plaintiff's other allegations against Defendants relate to discrete events that occurred in the past. At most, these discrete, past events show that Plaintiff may have faced danger in the past, but they are insufficient to show imminent danger to Plaintiff. *See Vandiver*, 727 F.3d at 585 (citations omitted).

Therefore, § 1915(g) prohibits Plaintiff from proceeding *in forma pauperis* in this action. Plaintiff has twenty-eight (28) days from the date of entry of this order to pay the civil action filing fees, which total $405.00. When Plaintiff pays his filing fees, the Court will screen his complaint as required by 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c). If Plaintiff does not pay the filing

fees within the 28-day period, this case will be dismissed without prejudice, but Plaintiff will continue to be responsible for payment of the $405.00 filing fees.

Dated:    December 15, 2023              /s/ Robert J. Jonker
                                          Robert J. Jonker
                                          United States District Judge


**SEND REMITTANCES TO THE FOLLOWING ADDRESS**:

Clerk, U.S. District Court
399 Federal Bldg.
110 Michigan St., N.W.
Grand Rapids, MI 49503


**All checks or other forms of payment shall be payable to "Clerk, U.S. District Court."**

8